## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DENNIS KLAPATCH and RICHARD LEE, individually and for others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Civil Action No. 18-CV-11581-RGS ) |
| BHI ENERGY I POWER SERVICES, LLC, | ) ) |
| Defendant. | ) ) ) |

## PLAINTIFFS' MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARD, ATTORNEYS' FEES, AND COSTS

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iv

INTRODUCTION ...........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................................2

    **I.**    **Factual Allegations** .........................................................................................................2

    **II.**    **Overview of Investigation, Litigation, and Settlement Negotiations** ......................2

SUMMARY OF THE SETTLEMENT TERMS..............................................................................3

    **I.**    **Settlement Amount** .........................................................................................................3

    **II.**    **Payments to Plaintiffs** ....................................................................................................3

    **III.**    **Payment Procedure** ........................................................................................................3

    **IV.**    **Release** .............................................................................................................................4

    **V.**    **Allocation Formula** .......................................................................................................5

    **VI.**    **Service Awards** ..............................................................................................................5

    **VII.**    **Attorneys' Fees and Litigation Costs** ..........................................................................5

ARGUMENT...................................................................................................................................5

    **I.**    **A One-Step Approval Process Is Standard for FLSA Settlements.** ..........................5

    **II.**    **Negotiating the Settlement Checks as Consent to Join FLSA Collective Action Settlement is Common Practice.** .....................................................................................7

    **III.**    **The Settlement Is Fair and Reasonable and Should Be Approved.** ..........................9

    **IV.**    **Notice with Settlement Checks Increases the Fairness of the Settlement.** ...........12

    **V.**    **The Service Awards to Plaintiff Should Be Approved as Fair and Reasonable.** .13

    **VI.**    **Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.** ...........14
    **A.**    **The Court Should Apply the Percentage of the Fund Method.**..............................14

**B.**        **Attorneys' Fees are Reasonable in Light of the Settlement Participation.**............15

**C.**        **33% of Gross Settlement Amount is Reasonable.**........................................................16

CONCLUSION............................................................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Aros v. United Rentals, Inc.,*
  Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470 (D. Conn. July 26, 2012) ......................................6

*Bacchi v. Massachusetts Mut. Life Ins. Co.,*
  CV 12-11280-DJC, 2017 WL 5177610 (D. Mass. Nov. 8, 2017) ............................................17

*Beckman v. KeyBank, N.A.,*
  293 F.R.D. 467 (S.D.N.Y. 2013) ..............................................................................................6

*Besic v. Byline Bank, Inc.,*
  No. 16 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015) ..........................................9, 12

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ................................................................................................................14

*Bozak v. Fedex Ground Package Sys., Inc.,*
  No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014)..........................................6, 13

*Brotherton v. Cleveland,*
  141 F.Supp.2d 907 (S.D. Ohio 2001).......................................................................................17

*Bussie v. Allamerica Fin. Corp.,*
  No. 97 Civ. 40204, 1999 WL 342042 (D. Mass. May 19, 1999) .............................................13

*Cameron-Grant v. Maxim Healthcare Servs., Inc.,*
  347 F.3d 1240 (11th Cir. 2003) .................................................................................................7

*Campbell v. Advantage Sales & Mktg. LLC,*
  No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012)..............................................6

*Cerrato v. Durham Pub. Sch. Bd. of Educ.,*
  No. 1:16CV1431, 2017 WL 2983301 (M.D.N.C. Mar. 17, 2017) .............................................8

*Cunha v. Avis Budget Car Rental, LLC,*
  No. 16 Civ. 10545, 2016 WL 6304432 (D. Mass. Oct. 26, 2016) .............................................6

*Curtis v. Scholarship Storage Inc.,*
  No. 14 Civ. 303, 2016 WL 3072247 (D. Me. May 31, 2016) ...................................................9

*DeLeon v. Wells Fargo Bank, N.A.,*
  No. 12 Civ. 4494, 2015 WL 2255394 (S.D.N.Y. May 7, 2015) ..............................................14

*Dent v. ITC Serv. Grp., Inc.,*
  No. 12 Civ. 00009, 2013 WL 5437331 (D. Nev. Sept. 27, 2013)............................................14

*Dixon v. Zabka,*
  No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) ................................................6

*Durrett v. Hous. Auth. of City of Providence,*
  896 F.2d 600 (1st Cir. 1990) .....................................................................................................9

*Edelen v. Am. Residential Servs.,*
  Civ. A. No. DKC-11-2744, 2013 WL 3816986 (D. Md. July 22, 2013) ...................................8

*Gagliastre v. Capt. George's Seafood Rest., LP,*
  No. 2:17CV379, 2019 WL 2288441 (E.D. Va.May 29, 2019) ................................................18

*Genesis Healthcare Corp. v. Symczyk,*
  133 S. Ct. 1523 (2013)................................................................................................................6

*Henry v. Little Mint, Inc.,*
  No. 12 Civ. 3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ............................................10

*Hooker v. Sirius XM Radio, Inc.*,
  No. 4:13-CV-003, 2017 WL 4484258 (E.D. Va. May 11, 2017) .................................. 18, 19

*In re Bayou Sorrell Class Action*,
  No. 6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) .................................. 18

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
  No. MDL 09-2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) .................................. 13

*In re Domestic Air Tranp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) .................................................................................... 11

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................................................. 18

*In re Neurontin Mktg & Sales Practice Litig.*,
  No. 04–cv–10981–PBS, 2014 WL 5810625 (D.Mass. Nov.10, 2014) .......................... 17

*In re Newbridge Networks Sec. Litig.*,
  1998 WL 765724 (D.D.C. Oct. 23, 1998) ...................................................................... 11

*In re Ravisent Techs., Inc. Sec. Litig.*,
  2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ................................................................... 11

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) ...................................................................................... 15

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) ..................................................................................... 14, 15

*In re TJX Companies Retail Sec. Breach Litig.*,
  584 F. Supp. 2d 395 (D. Mass. 2008) ............................................................................ 16

*In re Xcel Energy, Inc., Securities Litigation*,
  364 F.Supp.2d 980 (D.Minn.2005) ................................................................................ 18

*Johnson v. VCG Holding Corp.*,
  802 F. Supp. 2d 227 (D. Me. 2011) .................................................................................. 7

*Kirkpatrick v. Cardinal Innovations Healthcare*,
  *Sols.*, 352 F. Supp. 3d 499 (M.D.N.C. 2018) ............................................................... 18

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
  No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) .................................... 6

*Lapan v. Dick's Sporting Goods, Inc.*,
  No. 13 Civ. 11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015) ................................ 10

*Lazy Oil Co. v. Witco*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997) ............................................................................. 11

*Legros v. Mud Control Equip., Co.*,
  No. 15-1082, 2017 WL 925730 (W.D. La. Mar. 6, 2017) ............................................. 18

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ....................................................................................... 9

*Mazola v. May Dept Stores Co.*,
  1999 WL 1261312 (D.Mass. Jan. 27, 1999) .................................................................. 17

*Norman v. Hous. Auth. of the City of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) ..................................................................................... 15

*O'Connor v. Oakhurst Dairy*,
  No. 14 Civ. 00192, 2015 WL 2452678 (D. Me. May 22, 2015) ..................................... 6

*Ortiz v. Chop't Creative Salad Co. LLC*,
  No. 13 Civ. 2541(KNF), 2014 WL 1378922 (S.D.N.Y. Mar. 25, 2014) ......................... 8

*Pike v. New Generation Donuts, LLC*,
  No. 12 Civ. 12226, 2016 WL 707361 (D. Mass. Feb. 20, 2016) ................................... 6

*Powell v. Lakeside Behavioral Healthcare, Inc.*,
    No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011) ..........................................6
*Prena v. BMO Fin. Corp.*,
    No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) .........................................6
*Raymer v. Mollenhauer*,
    No. 10 Civ. 210,2011 WL 338825 (N.D. Ind. Jan. 31, 2011) ...........................................6
*Roberts v. Apple Sauce, Inc.*,
    No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014)........................................6
*Roberts v. TJX Companies, Inc.*,
    No. 13-CV-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ..........................16
*Scovil v. FedEx Ground Package Sys., Inc.*,
    No. 10 Civ. 515, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ....................................9, 13, 17
*Seghroughni v. Advantus Rest., Inc.*,
    No. 8:12-cv-2000-T-23TBM, 2015 WL 390329........................................................................8
*Shaw v. Toshiba America Information Systems, Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000) .............................................................................. 11, 12
*Singleton v. AT&T Mobility Servs., LLC*,
    146 F. Supp. 3d 258 (S.D.N.Y. 2015) ...................................................................................9
*United States v. Cannons Eng'g Corp.*,
    899 F.2d 79 (1st Cir. 1990) ....................................................................................................9
*Vela v. City of Houston*,
    276 F.3d 659 (5th Cir. 2001) ...............................................................................................18
*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .......................................13
*Winingear*,
    2014 WL 3500996...................................................................................................................18
*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...............................................................................................12
*Woods v. N.Y. Life Ins. Co.*,
    686 F.2d 578 (7th Cir. 1982) .................................................................................................7
*Woolfson v. Caregroup, Inc.*,
    No. 09 Civ. 11464, 2010 WL 10063268 (D. Mass. Sept. 13, 2010) ...................................10

Statutes

29 U.S.C. § 216(b) ........................................................................................................................6

Rules

Federal Rule of Civil Procedure 23 .......................................................................................... 6, 7

Other Authorities

*Hybrid Class Action, Dual Certification, and Wage Law Enforcement in the Federal Courts*,
    29 Berkeley J. Emp. & Lab. L. 269 (2008) ..........................................................................12
William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) .......................................10

## **INTRODUCTION**

Plaintiffs Dennis Klapatch and Richard Lee (collectively, "Named Plaintiffs") and Defendant BHI Energy | Power Services, LLC ("Defendant" and, together with Named Plaintiffs, the "Parties") have agreed, subject to Court approval, to resolve this wage and hour lawsuit with Named Plaintiffs, Opt-in Plaintiffs, and the Settlement Class (collectively, "Plaintiffs"). The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona-fide dispute. The settlement was reached after in-depth investigation, contested pleadings, 2 full day mediations with experienced wage and hour mediator, Anne Estevez, and review of documentary evidence and payroll data, was the result of arm's-length settlement negotiations between experienced counsel, and provides good value to the workers it will benefit. Exhibit A, Dunlap Decl., ¶¶21, 24, 25, 27, 33, 40.

As shown below, the Parties' Settlement[1] is a fair and reasonable resolution to a *bona fide* dispute between the Parties regarding the Plaintiffs' classification status under the FLSA. Under the Settlement, the Gross Settlement Amount represents approximately 98% of the two-year back wages and 66% of the three year back wages. *See* Declaration of Andrew W. Dunlap (attached as "Ex. A"), at ¶40. The gross settlement without the Reserve Account represents approximately 93% of the two-year back wages and 62% of the three-year back wages. *Id.* Further, even after attorneys' fees and costs, the Net Settlement Amount payable to the Settlement Class Members is approximately 59% of their two-year back wages and 39% of their three-year back wages. *Id.*

Named Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement set forth in the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit B (filed under seal); (2) approving a Service Award of $15,000.00 to Klapatch and $10,000.00

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement and Release that is being filed under seal with the Court contemporaneously herewith.

to Lee; (3) approving Plaintiffs' request for 33% of the Gross Settlement Amount for attorneys' fees, plus an additional reimbursement of costs and expenses; and (4) dismissing the Lawsuit with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Factual Allegations

Named Plaintiffs are former employees of Defendant who were staffed to power plants and power related companies.  Named Plaintiffs allege that Defendant violated the FLSA by improperly classifying them and other employees who were staffed to power generation stations/plants as exempt from federal overtime requirements and failing to pay them overtime wages, which Defendant denied and continues to deny. Specifically, Plaintiffs claimed that they and other workers were paid the same hourly rate for all hours worked, including those in excess of 40 per workweek, without a guaranteed salary or overtime pay. Ex. A, ¶¶14-15.

### II.   Overview of Investigation, Litigation, and Settlement Negotiations

Before the initiation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. *Id.* ¶21. Class Counsel focused their investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they claimed to be entitled, and the propriety of collective action certification. Class Counsel obtained and reviewed documents from Klapatch and other sources, including job descriptions, and pay records from Defendant. *Id.* ¶23. Plaintiffs' Counsel also conducted in-depth interviews of Named Plaintiffs and the Opt-in Plaintiffs.

On July 26, 2018, Named Plaintiffs filed a Collective Action Complaint (the "Complaint") against Defendant in this Court on behalf of themselves and others alleged to be similarly situated, alleging that Defendant violated the FLSA by improperly classifying them and other employees as exempt from federal overtime requirements and failing to pay them overtime wages. Doc. 1. The Complaint seeks recovery of overtime wages, attorneys' fees and costs, interest, and liquidated

damages. *Id.* Defendant answered the Complaint and disputed all material allegations, maintaining that Plaintiffs were appropriately classified as exempt from overtime and that the Named Plaintiffs' allegations were not suitable for collective adjudication. Doc. 17. Named Plaintiffs moved for conditional certification (Doc. 22), which Defendant opposed (Doc. 30). Separately, Defendant moved for summary judgment on the grounds that Named Plaintiffs and Opt-in Plaintiffs were appropriately classified as exempt. Doc. 31. On February 22, 2019, the Court granted Plaintiffs' motion for conditional certification of a collective action class and denied Defendant's motion for summary judgment. Doc. 45. . Following the Court's February 22nd Order, the Parties moved to stay the matter and focus on resolution. Doc. 48.

## SUMMARY OF THE SETTLEMENT TERMS

### I.  Settlement Amount

The Settlement Agreement establishes a Gross Settlement Amount which consists of (1) the negotiated settlement payments for distribution to the Plaintiffs; (2) a negotiated award of attorneys' fees and costs; (3) Service Awards for the Named Plaintiffs of $25,000.00; and (4) a Reserve Account.

### II.  Payments to Plaintiffs

Plaintiffs will receive their share of the settlement as follows: (1) one half as back wages, from which taxes will be withheld and for which a W-2 will be issued; and (2) one half as liquidated damages, for which Form 1099s will be issued. Defendant will pay the employer's share of any payroll taxes owing on any payment subject to payroll taxes.

### III.  Payment Procedure

Within fourteen (14) calendar days after the Court's approval of the Settlement Agreement becomes final, Defendant shall provide to the Settlement Administrator, in electronic format if possible, the names, last known addresses, last known telephone numbers (if any), last known email

addresses (if any), and social security numbers or tax ID numbers of each Settlement Class Member, along with the amount of the Settlement Award for each Settlement Class Member.

Within sixty (60) days following the Settlement Agreement becoming final, the Settlement Administrator shall mail the agreed upon and Court approved Settlement Notice to all Settlement Class Members along with each Settlement Class Member's individual Settlement Award check.  The Settlement Award checks shall be valid and negotiable for a period of one hundred and eighty (180) days (the "180-Day Period").  The Settlement Administrator shall provide prompt written certification to Class Counsel and Defendant's Counsel that the Settlement Notices and Settlement Award checks have been mailed, but in no case more than seven (7) days after the deadline to issue the Settlement Notice and Settlement Award checks.

## IV.   <u>Release</u>

Named Plaintiffs, Opt-In Plaintiffs and all other Settlement Class Members will release Defendant and all Releasees from any and all wage and hour and wage payment claims, demands, rights, liabilities, suits, and causes of action of every nature, kind, and description, whether based on federal, state or local law, including the FLSA, arising under or relating to misclassification, wages or overtime during their employment, including the claims asserted or that could have been asserted in the Lawsuit. The Settlement Administrator shall include the following release language on the back of each Settlement Award check:

> By signing or cashing this check, I affirm I am releasing Defendant and all Releasees of all released claims as set forth in the Settlement Agreement approved by the Court in *Klapatch et. al. v. BHI Energy | Power Services, LLC*, Civil Action No. Civil Action No. 18-CV-11581-RGS.  I affirm that I will not sue or assert any of the released claims, including FLSA claims, against Defendant or any Releasee.

According to the Settlement Agreement, Named Plaintiffs, Opt-In Plaintiffs and Settlement Class Members who participate in the Settlement, to the fullest extent allowed by law, are prohibited from asserting any claims released by them in this Settlement, and from commencing, joining in,

prosecuting, or voluntarily assisting in a lawsuit or adversarial proceeding against Defendant and/or any Releasee, based on claims released by them in the Settlement.

V.     **Allocation Formula**

Plaintiffs will be eligible to receive a Settlement Award pursuant to an allocation formula based on the number of overtime hours they worked during the maximum limitation periods. All Settlement Award determinations shall be based on Defendant's payroll and timekeeping records.

VI.    **Service Awards**

The Settlement Agreement provides that, subject to Court approval, Klapatch will receive a $15,000.00 Service Award and Lee will receive a $10,000.00 Service Award in recognition of assistance rendered in obtaining the benefits of the settlement for the collective as well as the risks they felt they took to do so. Klapatch and Lee assisted Class Counsel in the investigation of the claims at issue in the Lawsuit, produced documents to support the claims, helped Plaintiffs' Counsel achieve this Settlement, including by providing detailed accounts of his work experiences, hours worked, and the Defendant's practices and procedures.  Klapatch also testified in an oral deposition in a related matter.

VII.   **Attorneys' Fees and Litigation Costs**

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive 33% of the Gross Settlement Amount as attorneys' fees, plus reimbursement which represents reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter and the continued work obtaining the approval of this Settlement Agreement.

## ARGUMENT

I.     **A One-Step Approval Process Is Standard for FLSA Settlements.**

Throughout the country, a one-step approval process, rather than the two-step process for settlement approval of class actions, is appropriate in FLSA settlements that do not include classes

under Federal Rule of Civil Procedure 23 ("Rule 23").[2] This is because collective actions under 29

U.S.C. § 216(b) of the FLSA ("Section 216(b)") do not implicate the same due process concerns as

Rule 23 class actions since there are no absent class members. *O'Connor v. Oakhurst Dairy*, No. 14 Civ.

00192, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule

23 class actions are not necessary in the FLSA collective action context."). "Unlike Federal Rules of

Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to

affirmatively opt-in and be bound by any judgment." *Cunha v. Avis Budget Car Rental, LLC*, No. 16 Civ.

10545, 2016 WL 6304432, at *2 (D. Mass. Oct. 26, 2016) (internal quotation marks omitted); *Pike v.

New Generation Donuts, LLC*, No. 12 Civ. 12226, 2016 WL 707361, at *3 (D. Mass. Feb. 20, 2016)

(same); *O'Connor*, 2015 WL 2452678, at *4 ("[W]ith an opt-in collective action, only individuals who

affirmatively chose to join the litigation will be bound by its outcome."); *see also Genesis Healthcare Corp.

v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective

actions under the FLSA[.]").

Accordingly, courts do not apply the exacting standards for approval of a class action

settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476

(S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action

---

[2] *See Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *1-2 (D. Conn. May 23, 2013); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); *Castillo v. Noodles & Co.*, No. 16 Civ. 03036 (N.D. Ill. Dec. 23, 2016) ("A one-step settlement approval process is appropriate[]" in FLSA settlements.); *Briggs v. PNC Fin. Servs. Grp. Inc.*, No. 15 Civ. 10447 (N.D. Ill. Nov. 29, 2016) (same); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016); *Watson v. BMO Fin. Corp.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016); *Blum v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (S.D.N.Y. May 6, 2016); *Besic v. Byline Bank, Inc.*, No. 15 Civ. 8003 (N.D. Ill. Oct. 26, 2015); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Anwar v. Transp. Sys., Inc.*, No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014); *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011); *Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825, at *1 (N.D. Ind. Jan. 31, 2011).

under Rule 23."); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579- 80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions). Where, as in this matter, individuals are not part of the settlement unless they execute their pro rata settlement check, there is no need to require that the settlement provide for opt-outs or objections. *See Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011) ("The central difference between collective certification under the FLSA and under Rule 23 is the FLSA's requirement that those interested in joining the putative class opt in, while Rule 23 certification requires the uninterested to opt out.") (citing *Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 (11th Cir. 2003)). Here, Settlement Class Members will each receive a Settlement Award check with their pro-rata portion of the Net Settlement Amount, and they have the option to execute the Settlement Award check confirming their approval of the Settlement and consenting to become a party to the Lawsuit for purposes of the Settlement.  If a Class Member does not execute and cash his/her Settlement Award check, then they will not be considered a Settlement Class Member, will not release any claims that they may have against Defendant, and will have the option to bring a separate action.

## II.  <u>Negotiating the Settlement Checks as Consent to Join FLSA Collective Action Settlement is Common Practice.</u>

Under the Parties' Settlement Agreement, Settlement Class Members who negotiate or deposit the Settlement Award checks are consenting to join the FLSA collective action and will compromise their rights to separately sue Defendant for overtime pay under the FLSA. Allowing Settlement Class Members to participate in the Settlement by the act of negotiating a settlement check ensures the most comprehensive relief for the Settlement Class Members, because they are not required to fill in and return a written consent form.

As shown below, "cashing-of-the-check" FLSA opt-in procedures are commonly approved by federal courts throughout the country as a method of requiring affirmative steps to participate in

the FLSA collective. This method allows maximum participation by reducing the burden to participate.

For example:

- *Cerrato v. Durham Pub. Sch. Bd. of Educ.*, No. 1:16CV1431, 2017 WL 2983301, at *1 (M.D.N.C. Mar. 17, 2017)(conditionally certifying FLSA settlement class of "Any and all non-managerial employees employed by Integrity to work in Durham Public Schools pursuant to a contract between Durham Public Schools and SSC Service Solutions, Inc. ("Service Solutions") who worked overtime between September 16, 2012, and November 5, 2014, and who sign or negotiate the settlement checks distributed pursuant to the Settlement Agreement."

- *Edelen v. Am. Residential Servs.*, Civ. A. No. DKC-11-2744, 2013 WL 3816986, at *2 (D. Md. July 22, 2013) – granting final approval for FLSA settlement opt-in procedure where the agreement provided "members of the proposed collective class who sign or endorse their settlement checks from Defendants will be deemed to have agreed to (1) joining the FLSA collective action and (2) releasing their FLSA claims (including any claims for liquidated damages) arising out of Defendants' purported failure to calculate their overtime rates of pay properly during the period from September 23, 2008, to October 5, 2011."

- *Furman v. At Home Stores, LLC.*, No. 1:16-cv-08190, Doc. 30 (N.D. Ill. May 1, 2017) (Rowland, M.J.), granting final approval of FLSA collective action settlement involving cashing of the check FLSA opt-in procedure, where the back of each settlement check stated "By cashing this check, I agree to join the case [], and I agree to participate in the Settlement and be bound by the release of claims in the Settlement Agreement." *Id.* at *3-4; *see also Furman*, No. 1:16-cv-08190, Doc. 28-1 at *11.

- *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-cv-2000-T-23TBM, 2015 WL 390329, at *1 n.* (M.D. Fla. Jan. 28, 2015) – granting preliminary approval of FLSA class and collective action settlement and approving use of cashing of the check method where the settlement agreement stated "[b]y endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation, through the date on which the Court grants preliminary approval of the settlement."

- *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 Civ. 2541(KNF), 2014 WL 1378922, at **2, 14 (S.D.N.Y. Mar. 25, 2014) – approving FLSA class and collective action and the cashing check opt in procedure for FLSA collective action members who endorse their settlement checks.

This method is "calculated to maximize the collective members' participation in the settlement" and such "efforts to maximize participation suggest that this is not a settlement where defendants are attempting to buy peace by paying off the attorneys and leaving the collective members with a recovery

that is only illusory." *Besic v. Byline Bank, Inc.*, No. 16 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015).  Here, Settlement Class Members who negotiate or deposit the Settlement Award checks sent to them are consenting to join the FLSA collective action portion of this Lawsuit and giving up any rights to separately sue Defendant for overtime pay under the FLSA, but Settlement Class Members who do not negotiate or deposit the Settlement Award checks they receive will preserve any rights to separately sue Defendant or its subsidiaries under the FLSA. *Id.*  This method is fair and aimed at maximizing the broadest possible participation by Settlement Class Members in the Settlement and peace of mind for all parties.

## III.    <u>The Settlement Is Fair and Reasonable and Should Be Approved.</u>

The Court has a duty to determine whether the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 14 Civ. 303, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (internal quotation marks omitted); *see also Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (S.D.N.Y. 2015) (same).  Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g.*, *Curtis*, 2016 WL 3072247 at *3; *Singleton*, 146 F. Supp. 3d at 260; *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014). If a proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . we allow the district court to approve the settlement. . . ."); *Curtis,* 2016 WL 3072247, at *2 ("A court may approve a FLSA settlement if it is 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions'"); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements") (internal quotation marks omitted);

William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

The Settlement in this case easily meets the standard for approval. The Settlement was the result of extensive pre-suit investigation, formal discovery, two full day mediations, and substantial arm's-length negotiations. Ex. A, ¶¶21, 24, 25, 27, 33 *See Woolfson v. Caregroup, Inc.*, No. 09 Civ. 11464, 2010 WL 10063268, at *2 (D. Mass. Sept. 13, 2010) (approving FLSA settlement where it was "the result of arms-length negotiations between experienced counsel representing the interests of the plaintiffs and defendant, after thorough factual and legal investigation"). Recognizing the uncertain legal and factual issues involved, the Parties reached the Settlement pending before the Court.

The Settlement amount is fair and appropriate, especially in light of the considerable risk that Named Plaintiffs face. Ex. A, ¶¶39, 40, 41. A trial on the merits would involve significant risks for Named Plaintiffs, Opt-In Plaintiffs and Settlement Class Members as to both liability, damages, and costs.

Finally, unless Plaintiffs meet their burden to prove a "willful" violation, only a 2-year limitation period will apply and thus their potential damages will be diminished.

The proposed allocation of the Settlement is also reasonable. It reflects a proportion of damages sought by Named Plaintiffs based on the actual hours worked by Named Plaintiffs, Opt-In Plaintiffs, and Settlement Class Members and paid by Defendant, which is a reasonable approximation of each individual's alleged damages. *See, e.g.*, *Lapan v. Dick's Sporting Goods, Inc.*, No. 13 Civ. 11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015) (approving class and collective overtime settlement agreement with an allocation formula based upon the number of weeks worked by class members); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *3, *17 (S.D.N.Y. May 23, 2014) (approving allocation formula based in part on number of workweeks class members were employed

during the class period).

In the present case, the proposed Settlement will provide individual settlement payments to the Settlement Class Members representing a substantial percentage of their claimed damages as calculated by Plaintiff's counsel. Ex. A, at ¶¶40, 41. The proposed method of allocation (individual payments proportionate to their claimed damages) is fair to all. *See Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages."). Under the Settlement, the Gross Settlement Amount represents approximately 98% of the two-year back wages and 66% of the three year back wages. *See* Ex. A ¶40. The Gross Settlement Amount, less the Reserve Fund, represents approximately 93% of the two-year back wages and 62% of the three year back wages. *Id.* Further, even after attorneys' fees and costs, the Net Settlement Amount payable to the Settlement Class Members is approximately 59% of their two-year back wages and 39% of their three-year back wages.

11

*Id.* The recovery by the Settlement Class Members is well within the normal range for settlements of this nature which have been approved by courts nationwide. *Id.* ¶41.

The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014)(where "the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" the district court was not required to quantify the net expected value of continued litigation).

## IV.   Notice with Settlement Checks Increases the Fairness of the Settlement.

The aforementioned "cashing-of-the-check" approach for individuals to affirmatively consent to join an FLSA collective action allows maximum participation by reducing the burden to participate. *See* Andrew C. Brunsden, *Hybrid Class Action, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 294 (2008).

In *Besic*, the court granted final approval of an FLSA collective action settlement involving the same "cashing of the check" opt-in procedure advocated by the parties in this case. 2015 WL 13763028 at *3. In doing so, the court noted the "cashing of the check" opt-in procedure was "calculated to maximize the collective members' participation in the settlement" and found "the efforts to maximize participation suggest that this is not a settlement where defendants are attempting to buy peace by paying of the attorneys and leaving the collective members with a recovery that is only illusory." *See id.* at *2.

The total Settlement is fair, reasonable, and adequate. Ex. A, at ¶41. The fact that Defendant is sending checks to all potential class members with the Notice further enhances the equitable nature of the Settlement because it increases participation. *Id.*

**V.**   **The Service Awards to Plaintiff Should Be Approved as Fair and Reasonable.**

Named Plaintiffs request approval of Service Awards of $25,000.00. The Service Awards that they request are reasonable given the contributions they made to advance the prosecution and resolution of the lawsuit. *Scovil*, 2014 WL 1057079, at *6 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."). This is especially true in employment litigation. *See Bozak*, 2014 WL 3778211, at *4 ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co- workers." (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (internal quotation marks omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Poly J. 395 (2006).

Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-2067, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014) ("The purpose of [] incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class."); *Bussie v. Allamerica Fin. Corp.*, No. 97 Civ. 40204, 1999 WL 342042, at *3-4 (D. Mass. May 19, 1999) (noting courts consider, *inter alia*, efforts of the named plaintiff in granting awards). Service awards are commonly awarded to those who serve the class's and collective's interests. *Scovil*, 2014 WL 1057079, at *6.

Courts in this circuit and others have approved service awards for the same amounts in employment cases. *See, e.g.*, *Scovil*, 2014 WL 1057079, at *8 (approving $15,000 service awards to

plaintiffs who provided assistance throughout the lawsuit and discussing comparable awards in other district courts); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *7 (S.D.N.Y. May 7, 2015) (approving $15,000 service to plaintiff for "participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation"); *Dent v. ITC Serv. Grp., Inc.*, No. 12 Civ. 00009, 2013 WL 5437331, at *4, *9 (D. Nev. Sept. 27, 2013) (approving $15,000 award where plaintiff "subjected himself to a substantial, and detrimental, level of notoriety by instituting this lawsuit, assumed a significant financial risk by prosecuting this litigation, and pledged to fully participate in discovery in this case and fully cooperated with Class Counsel in prosecuting this case.") (internal quotation marks omitted).   Here, Named Plaintiffs' actions have resulted in meaningful and appropriate benefit to Settlement Class Members, leading to an overall result which is fair and reasonable.

## VI.   Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.

### A.  The Court Should Apply the Percentage of the Fund Method.

Named Plaintiffs' request for 33% of the common fund settlement as attorneys' fees plus costs and expenses is reasonable. Plaintiffs' request this amount, even though the Settlement Agreement allows for fees of 40% of the Gross Settlement Amount. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). This is "founded on the equitable principle that those who have profited from litigation should share its costs." *Id.* at 305 n.6.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims — the lodestar method and the percentage of the fund method, *see In re Thirteen Appeals*, 56 F.3d at 306-7 — courts generally favor awarding fees in common fund cases based upon a percentage

of the fund. *Id.* at 307 (noting that "use of the percentage of the fund method in common fund cases is the prevailing praxis").

This is so because employing the percentage of the fund method in common fund cases promotes judicial economy. The percentage of the fund method promotes early resolution of cases and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See id.* ("using the [percentage of fund] method in a common fund case enhances efficiency…."); *see also Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "[f]rom the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model"). Where attorneys' fees are limited to a percentage of the total, there is a strong disincentive for attorneys "to be inefficient or to drag [their] feet in pursuing settlement options." *In re Thirteen Appeals*, 56 F.3d at 307. Moreover, the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *Id.* ("[T]he [percentage of the fund] method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts.") (internal quotation marks and citation omitted).

The "First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005) (*citing In re Thirteen Appeals*, 56 F.3d at 307).

**B. Attorneys' Fees are Reasonable in Light of the Settlement Participation.**

Moreover, Class Counsels' request for 33% of the Gross Settlement Amount as attorneys' fees and reimbursement for additional costs and litigation expenses is reasonable in light of the meaningful and appropriate benefit their efforts conferred on the collective. The Settlement Agreement provides

15

that Defendant will issue checks to all Settlement Class Members and the recovery that Settlement Class Members will have the option of accepting is significant given the substantial risk that continued litigation may have yielded little or no recovery at all.

Courts in this District have given weight to the percentage of the clams made by class members where determining a reasonable fee award under the percentage of the fund method. *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *12 (D. Mass. Sept. 30, 2016). As Judge William J. Young observed in *TJX Companies*, "[t]his approach will not only encourage more realistic settlement negotiations and agreements, but also will drive class counsel to devise ways to improve how class action suits and settlements operate." *Id.* (citing *In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 406 (D. Mass. 2008). This is exactly what Class Counsel has accomplished. Courts prefer "a resolution where the attorneys are incentivized to get class members to receive their claims, rather than simply incentivized to get a large settlement pool that will result in a large fee regardless of what reverts back to the Defendant." *Id.* Linking attorney's fees to claims made will both prevent undeserved windfalls for class counsel, and curb the filing of meritless lawsuits. *See id.* (citing *In re TJX Companies Retail Sec. Breach Litig.*, at 406–07).

In Class Counsel's experience, notice accompanied by checks results in roughly a 90% opt-in rate. Ex. A, at ¶41. If the Court is inclined to link the attorneys' fees to claims made, Class Counsel's request is reasonable.

**C. 33% of Gross Settlement Amount is Reasonable.**

Plaintiffs' request for attorneys' fees is part of the bargained-for Settlement. In accordance with the governing contingency fee agreement, the Parties agreed that, subject to Court approval, Class Counsel's fees would be 40% of the Gross Settlement Amount, but, consistent with the generally approved percentage of the fund approach in wage and hour cases, Plaintiffs' request 33% here. The size of this Settlement weighs in favor of granting a fee award of 33% of the Gross Settlement

16

Amount. Courts routinely grant requests for 33% of the fund in cases with settlement funds similar to or substantially larger than this one. Fee awards in common fund cases typically range "from 20 to 50 percent of the common fund created." *Brotherton v. Cleveland,* 141 F.Supp.2d 907, 910 (S.D. Ohio 2001); *See Barbosa v. Publishers Circulation Fulfillment, Inc.*, No. 08 Civ. 10873 (D. Mass Nov. 25, 2009) (Dein, M.J.) (approving one-third of $1.4 million settlement fund in misclassification case) (settlement approval motion at ECF No. 58); *see also Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. April 19, 2016) (approving one-third of $3.3 million settlement plus costs and expenses in misclassification case) (settlement approval motion at ECF No. 215); *Anderson v. HomeDelivery*, No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) (approving one-third of $900,000 settlement fund in misclassification case) (final settlement approval motion at ECF No. 106); *Matamoros v. Starbucks*, No. 08 Civ. 10772 (D. Mass. August 16, 2013) (approving one-third of $23.5 million settlement for settlement of wage claims of hourly-paid workers) (approval motions at ECF Nos. 159 and 167); *Crenshaw v. Texas Roadhouse, Inc., et al.*, No. 11 Civ. 10549 (D. Mass. September 5, 2012) (approving one-third of $5 million settlement fund for wage claims of hourly-paid employees) (approval motion at ECF No. 53); *Cutter v. HealthMarkets, Inc., et al.*, No. 10 Civ. 11488 (D. Mass. Dec. 11, 2012) (approving one-third of common fund settlement in misclassification case) (approval motion at ECF No. 77); *see also Scovil*, 2014 WL 1057079, at *5 (taking judicial notice that a one-third common fund fee "is consistent with wage-and-hour settlements in the . . . jurisdiction of Massachusetts").

"Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent." *Bacchi v. Massachusetts Mut. Life Ins. Co.*, CV 12-11280-DJC, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017); *see In re Neurontin Mktg & Sales Practice Litig.*, No. 04–cv–10981–PBS, 2014 WL 5810625, at *3 (D.Mass. Nov.10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *Mazola v. May Dept Stores*

17

*Co.*, 1999 WL 1261312, at *4 (D.Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."); s*ee also Hall v. Dominion Energy, et al.*, CA 3:18-cv-00321-JAG, Doc. 92 (E.D. Vir., Aug. 22, 2019) (approving 35% attorneys' fees in a straight time for overtime case where collective members were mailed checks with notice); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 822 (3d Cir. 1995) (In common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"), *cert. denied,* 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995); *In re Xcel Energy, Inc., Securities Litigation,* 364 F.Supp.2d 980 (D.Minn.2005)(courts "frequently award[ ] attorney fees between twenty-five and thirty-six percent of a common fund in ... class actions"); *In re Bayou Sorrell Class Action,* No. 6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) (awarding attorney fees of 36%); *Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir. 2001) (awarding 40% attorneys' fees); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (James, J.) (approving attorney fees of 40%); *See, e.g., Winingear*, 2014 WL 3500996, at *1 (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Devine v. City of Hampton, Virginia*, No. 4:14CV81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015)(finding 33.98% ($1,189,167.00) in fees and costs on a $3,500,000 FLSA settlement to be reasonable); *see also Gagliastre v. Capt. George's Seafood Rest., LP*, No. 2:17CV379, 2019 WL 2288441, at *5 (E.D. Va. May 29, 2019) ("Fees awarded under "the percentage-of-recovery" method in settlements under $100 million have ranged from 15% to 40%); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018)(finding 33.39% percent award is within the range of percentages that have been approved in other cases in the Fourth Circuit);

18

*Hooker v. Sirius XM Radio, Inc.*, No. 4:13-CV-003, 2017 WL 4484258, at *2 (E.D. Va. May 11, 2017)(TCPA claim; awarding 35% fees).

Class Counsel's fee request should be approved because it is reasonably based on the market rate. Ex. A, ¶¶37. No further showing or analysis is needed. Further, Defendant does not oppose this request. *Id.*

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the Settlement as fair, adequate, and reasonable, as set forth in the Settlement Agreement and Release attached hereto as Exhibit B (under seal); (2) approving Service Awards of $15,000.00 to Klapatch and $10,000.00 to Lee; (3) approving Plaintiffs' request for 33% of the Gross Settlement Amount for attorneys' fees and additional costs and litigation expenses; (4) incorporating the terms of the Settlement Agreement; (5) dismissing this case with prejudice.

Respectfully submitted,

By: */s/ Richard M. Schreiber*
    **Michael A. Josephson**
    State Bar No. 24014780
    **Andrew W. Dunlap**
    State Bar No. 24078444
    **Richard M. Schreiber**
    State Bar No. 24083395
    **JOSEPHSON DUNLAP, LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH, PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046

713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Philip J. Gordon
Kristen M. Hurley
**GORDON LAW GROUP**
585 Boylston Street
Boston, MA 02116
Telephone: 617-536-1800
Facsimile: 617-536-1802

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

### CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendant regarding this motion and the relief requested herein. Counsel stated that Defendant is unopposed to this motion.

/s/ Richard M. Schreiber
Richard M. Schreiber

### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Richard M. Schreiber
Richard M. Schreiber